## FARMERS' GIN CO. v. SMITH.
### No. 915.

Court of Civil Appeals of Texas. Waco.
April 24, 1930.

Rehearing Denied June 5, 1930.

Walker & Baker, of Cleburne, for appellant.

B. Jay Jackson, of Cleburne, for appellee.

GALLAGHER, C. J.

This appeal is prosecuted by appellant, Farmers' Gin Company, a corporation, from a judgment against it in favor of appellee, R. W. Smith, for the sum of $222.65 as damages for his wrongful discharge from appellant's employment. Appellee alleged that he was employed by appellant to act as general manager of its gin plant for the term of one year from May 1, 1928; that his duties under such employment were such as were usually and customarily performed by a general manager; that he received an injury in the course of his employment on November 16, 1928, consisting of the fracture of a bone in his forearm; that appellant carried workmen's compensation insurance; that he received compensation from the insurance carrier for partial incapacity from the time of said accident until January 26, 1929, in the sum of $179.10, which was applied as a credit on his stipulated salary for such period of time; that on December 26, 1928, he was able to carry out his contract of employment, when appellant, without fault, failure, or refusal on his part to do so, discharged him from its employment. He asked for the unpaid portion of his salary for the remainder of the contract year, less sums received by him from appellant's insurance carrier as aforesaid and from other employment after his discharge.

Appellant answered, denying that appellee was employed for the period of a year, and alleged that he was in fact employed on condition that he could be discharged at any time his services were not satisfactory; that appellant at all times after his injury, and at the time of his discharge, was unable to work and unable to perform the duties of his employment, and refused to work or perform the same. Appellant also alleged that appellee was allowed and paid compensation for his injuries by the insurance carrier, and

that he was not entitled to wages while drawing compensation.

The case was submitted to a jury on special issues, in response to which the jury found, in substance: (1) There was an existing contract of employment between appellant and appellant on November 16th, 1928, and such contract was for one year; (2) appellee was able to and did carry out his agreement with appellant under said contract from November 16th, 1928, to December 26, 1928; (3) appellee suffered loss or damage by reason of the termination of such contract of employment; (4) the loss or damage so suffered amounted to $222.65; (5) appellee did not agree as a part of his contract of employment that, if he was unable to perform the duties for which he was employed, he could be dismissed at any time.

The court rendered judgment on said findings in favor of appellee against appellant for the sum of $222.65, the amount of his damages as found by the jury.

### Opinion.

█ Appellant requested a peremptory charge in its favor, and the refusal of the same is assigned as error. Appellant's first proposition thereunder presents the contention that appellee was not entitled to any salary from it while he was drawing compensation for his injury from the insurance carrier. The compensation paid appellee was on the basis of partial incapacity only. All compensation received by him was credited on his salary. Appellant not only did not object to his drawing compensation while he remained on duty after the accident, but there is affirmative testimony tending to show that its officers approved and encouraged the same. Appellant cites in support of its contention the case of Lumbermen's Reciprocal Ass'n v. Coody (Tex. Civ. App.) 278 S. W. 856. Coody was a lumber mill foreman. He suffered a broken arm. While he carried the broken arm in a sling, he performed the duties of his employment after the accident as before, and his employer without complaint or question paid him his full salary as it accrued. He claimed compensation for his injury, and the insurance carrier denied his right to recover on account of the facts above recited. Notwithstanding such facts, the trial court found that he had suffered total temporary incapacity for a period of twelve weeks. The Court of Civil Appeals held that he had not suffered such incapacity, and further held that he had suffered no loss on account of his injury. The issue arose in that case between the employee and the insurance carrier, and not, as in this case, between the employer and the employee. Whether the insurance carrier could in this case have successfully resisted the payment of compensation to appellee is immaterial. Such compensation was voluntarily paid, and appel-

lant claimed and received credit therefor on appellee's salary. Said contention is overruled.

Appellant, by various propositions asserts that the uncontradicted evidence showed that appellee from the time of his injury on November 16, 1928, until his discharge on December 26, 1928, was unable to and did not perform the duties for which he was employed, and that such disability continued after his discharge until the latter part of March, 1929. Based on such assertion, appellant contends that the court erred in refusing its request for a peremptory instruction, in submitting over its objection to the jury for determination special issue No. 2, and in refusing to set aside the finding of the jury in response thereto. Appellee testified that he had had twenty-one years' experience in handling gins and gin machinery; that he knew the customary duties discharged by the manager of a gin plant; that he went to work for appellant as manager of its plant; that the agreement between him and appellant was that he was to keep up the machinery, treat the patrons right, and get all the business he could. He testified that the plant was turned over to him to look after; that he knew his duties as manager; that it was his duty to stay in the gin house and on the gin yard, help keep up the machinery, and do whatever came to hand to keep things moving; that he employed the hands, ran the engine, and sometimes bought a bale of cotton.

He further testified that the broken arm did not keep him from doing his work as manager of the plant; that he carried it in a sling five or six weeks; that a second engine was added to the plant after his employment and that prior to his injury he stopped and started both of the same when necessary; that after his injury he could not stop or start said engines with one hand, but that other employees did stop and start the same under his direction, and that he himself kept both said engines under constant observation, visiting them many times a day, and seeing that they were functioning properly. He further testified that at the time he was discharged he was on the job and was able to go on as manager and do the duties of a manager. He did testify on cross-examination that after his injury he could not do manual labor that required the use of both hands; that he could no longer do all the things he had in fact done before such injury, but that he was on the plant constantly, and, when anything got out of order, he instructed the other employees how to fix it, and that they voluntarily assisted him in doing those things which he could not do with one hand; that such things were not part of his duties as manager. He also testified that he kept the plant running without any additional expense to appellant on account of his

inability to do manual labor and to use both hands; that no one was employed in his stead when he was discharged. There was testimony tending to show that the great bulk of the season's ginning had been done at the time he was discharged.

■ Appellee's contract of employment being verbal and more or less indefinite as to the particular services to be rendered by him thereunder, what particular duties were required of him thereby was a question of fact to be determined by the jury. He testified affirmatively that his broken arm did not prevent his doing his work as manager of the plant and that he could have continued doing such work at the time he was discharged. Because he was a party to the suit, the jury were not required to take his statements unfavorable to his contention of capacity to discharge his duties as conclusive against him. Any contradictions in his testimony on such issue merely raised questions of fact for the jury. Funk v. Miller (Tex. Civ. App.) 142 S. W. 24, 25, par. 1; Melburn v. Webb (Tex. Civ. App.) 277 S. W. 800, 801; Davis v. Petroleum Casualty Co. (Tex. Civ. App.) 13 S.W.(2d) 981, 983. The jury found in response to special issue No. 2 that appellee was able to and did carry out his agreement with appellant from the time of his entry until his discharge. We understand the issue submitted and the finding of the jury thereon to mean that appellant was able to perform, and did perform, the duties required by his contract during such time. This was the real issue. The general rule for determining whether the court erred in refusing to direct a verdict, in submitting issues, or in refusing to set a verdict aside for lack of sufficient support in the evidence, is the same. Such rule is that in determining either of such contentions an appellate court must consider the evidence in its most favorable aspect for the opposite party, disregarding all evidence to the contrary. Stewart v. Miller (Tex. Civ. App.) 271 S. W. 311, 315, par. 4, and authorities there cited; Richardson v. W. C. Bowman Lumber Co. (Tex. Civ. App.) 274 S. W. 349, 351, par. 1; Commerce Farm Credit Co. v. Torrance (Tex. Civ. App.) 7 S.W.(2d) 1110, 1111, and authorities there cited. We are of the opinion that the finding of the jury on said issue is not without support in the evidence, and it follows, therefore, that the court did not err in the matters so complained of by appellant.

■ Appellant requested the court to charge the jury, in substance, that if they found from the evidence that appellee was incapacitated from November 16, 1928, to December 26, 1928, from performing the duties for which he was employed by appellant, and that he did not perform such duties, to answer special issue No. 2 in the negative. Said requested charge was of course neither an explanation nor a definition of any legal term used in the special issue to which it referred. It was merely a general instruction upon certain recited facts, directing the jury how to answer such issue if they found such facts to be true. The court did not err in refusing the same. Freeman v. G., H. & S. A. Ry. Co. (Tex. Com. App.) 287 S. W. 902, and authorities there cited; Id. (Tex. Civ. App.) 273 S. W. 979, 986, 987; Owens v. Navarro County Levee Improvement District No. 8, 115 Tex. 263, 280 S. W. 532, 536, par. 6; Missouri, K. & T. Ry. Co. v. Long (Tex. Com. App.) 299 S. W. 854, 855, pars. 1 and 2; McFaddin v. Hebert (Tex. Com. App.) 15 S.W.(2d) 213, 216, par. 2.

■ Appellant objected to the form of special issue No. 3, which asked the jury to find whether appellee had suffered loss or damage by reason of the termination of his contract of employment, and to the form of special issue No. 4, which asked the jury, in event they found appellee had suffered loss or damage from such termination, to find the amount thereof, on the ground that no rule or criterion was given the jury by which they could properly determine such issues. The jury found that appellee had been damaged in the sum of $222.65. It is apparent that this result was reached by adding together the amount paid by appellant to appellee on his salary in the sum of $1,175, the amount received by appellee as compensation from the insurance carrier in the sum of $179.10, and the amount earned by appellee in other employment after his discharge during the contract year in the sum of $223, which sums amounted in the aggregate to $1,577.10, and by deducting such aggregate amount from appellee's annual salary of $1,800. Said finding is therefore in accord with the pleadings, evidence, and other findings of the jury. Appellant did not suffer any injury by the failure of the court to give the jury specific instructions with reference to the measurement of the loss or damage suffered by appellee.

The judgment of the trial court is affirmed.