## KING v. SIEBER.
### No. 3718.

Court of Civil Appeals of Texas. Amarillo.
May 25, 1932.

George C. King and Storey, Leak & Storey, all of Vernon, for plaintiff in error.

Berry, Warlick & Gossett, of Vernon, for defendant in error.

JACKSON, J.

The plaintiff, Thomas A. King, instituted this suit in the district court of Wilbarger county against the defendant, E. Hayes Sieber, to recover damages in the sum of $5,800, alleged to have been occasioned by the fraudulent representations made to the plaintiff by the defendant relative to the amount and value of certain real estate.

The case was submitted to the court without the intervention of a jury, and judgment rendered that plaintiff take nothing by his suit, from which judgment the plaintiff, hereafter called appellant, by writ of error prosecutes this appeal.

The appellant, by proper assignment, insists that the Hon. W. N. Stokes, judge of the district court of Wilbarger county, was disqualified to hear and determine the case, because he and his firm had acted as counsel for appellant in the transactions out of which the alleged fraud arose.

The record discloses:

That on or about November 9, 1928, the appellee negotiated a loan from appellant in the sum of $4,000, and executed his note therefor, payable at Vernon, Tex., on November 9, 1929, with interest at the rate of 10 per cent. per annum, and providing for 10 per cent. additional in case of default as attorneys' fees. For the purpose of securing the payment of the note, the appellee executed and delivered to appellant a deed of trust of even date therewith on sections 11 and 12 in block B, Melvin, Blum & Blum survey in Bailey county, Tex.; and also a deed of trust on 203 acres of land situated in Wilbarger county, Tex. In negotiating for the loan, the appellee represented to appellant, making affidavit thereto, that the land in Bailey county, Tex., was of the reasonable value of $25 per acre, or an aggregate amount of $32,000, and was incumbered by a first lien to secure the payment of a $12,000 note held by a company at Denver, Colo.

That in September, 1929, the appellee defaulted in the payment of the interest on the first lien note held by the parties in Denver, and they notified appellant that they were proceeding to the foreclosure of their lien because of such default. The appellant consulted Judge W. N. Stokes when he received this information, and was advised to negotiate with the holders of the first lien, and, if the land was of sufficient value to satisfy the entire indebtedness, he could protect himself by purchasing the first lien and foreclosing both liens at one time. That some time thereafter the appellant informed Judge Stokes that he had arranged to purchase the first lien.

That shortly thereafter the appellee came to Vernon, and after some negotiations appellant accepted vendor's lien notes of the face value of $5,700, secured by a second lien on a tract of land known and described as 272.5 acres, more or less, situated in Wichita county, Tex. That there was a first lien on said land securing the payment of $7,500.

That at the time of these transactions Judge Stokes was a member of the law firm of Berry, Stokes, Warlick & Gossett. That said firm examined the abstracts of title to the land in Bailey county, Tex., drew the deeds of trust, which were acknowledged before E. L. Gossett and named W. N. Stokes as trustee. That the firm also examined the abstract of title to the Wichita county land, gave a writ-

ten opinion thereon, prepared the transfer of the notes appellant was accepting in lieu of the notes secured by liens on the Bailey and Wilbarger county lands, and the release of such liens. That during this time Judge Stokes was one of the members of said law firm and continued as a member thereof until January 1, 1931, when he became district judge.

The appellant, in his pleading, predicates his right to recover on the alleged fraudulent representations made to him by appellee to the effect that the tract of land in Wichita county contained approximately 272 acres, of which 172 acres were first class agricultural land of the value of $100 per acre and the remainder had a market value of $10 per acre. That he believed and relied on such representations, and was induced thereby to release his liens on the Bailey and Wilbarger county lands and accept the second lien notes in lieu thereof on the Wichita county land. That in truth and in fact there was no equity of any consequence in the land in Wichita county after the first lien for $7,500 had been satisfied.

■ The question of the fraudulent representations which appellant alleges as a cause of action had not arisen at the time of the exchange of appellant's note secured by a lien on the Bailey and Wilbarger county lands for the notes secured by the second lien on the Wichita county land. Appellant claims to have discovered the falsity of the representations some time after said transaction. Neither Judge Stokes nor his firm was counsel for or advised appellant relative to the law or the facts on which his suit in this case is based, and in our opinion Judge Stokes was not disqualified. Taylor v. Williams, 26 Tex. 583; H. & T. C. Ry. Co. v. Ryan, 44 Tex. 426; Glasscock v. Hughes, 55 Tex. 461; King v. Sapp, 66 Tex. 519, 2 S. W. 573; Cullen v. Drane, 82 Tex. 484, 18 S. W. 590; Butts et al. v. Davis et al. (Tex. Civ. App.) 149 S. W. 741.

The appellant presents as error the findings of the court and the judgment rendered against him, because the evidence did not support such findings nor warrant said judgment.

At the request of appellant the court found, among other things, in substance, that the representations made by appellee to appellant were expressions of opinion and so considered by appellant; that he gave appellant only such information as he had received from others concerning the Wichita county land; that appellant did not rely on such representations, but relied on his own judgment, and had the same opportunity to know the value and area of the land as appellee had, as appellant had made such inspection of the land as he desired.

■■ "The general rule for determining the sufficiency of the evidence to support the finding of a jury, or the trial court, is that the appellate court must consider the evidence in its most favorable aspect for the opposite party, disregarding all evidence to the contrary. Farmers' Gin · Company v. Smith (Tex. Civ. App.) 28 S.W.(2d) 839, and the cases therein cited; Wright v. Williamson (Tex. Civ. App.) 27 S.W.(2d) 558; Mueller v. Lander (Tex. Civ. App.) 27 S.W.(2d) 844. The determination of the preponderance of the evidence is generally for the jury, or the court where the case is tried by the court." Massoud et al. v. Attel et al. (Tex. Civ. App.) 32 S.W.(2d) 225, 226. Also Stubblefield v. Cooper (Tex. Civ. App.) 37 S.W. (2d) 818.

The appellant testified:

That he had had experience in buying and selling land and loaning money on land as security at the time of the transactions involved in this litigation. That appellee represented that the land contained 272 acres more or less, with between 170 and 200 acres in cultivation, and that the balance was rough pasture land. That there was a first lien against the property for $7,500; told him the consideration paid in previous sales. That he went with appellee to see the land, arriving about sundown, looked over a portion of it, and made the best inspection he could. That during the negotiations appellee did not claim to own the land, but argued that appellant was getting a good loan. That the land lies in such manner that no one could tell the number of acres without a close inspection. That: "As a matter of fact, you would have to make a survey of it before you could be absolutely sure."

That the land he inspected was worth $100 per acre, and he knew Mr. Burch and his wife, the makers of the notes, had no property except their equity in this land. After they returned to Vernon, they went over the whole matter again, and that:

"Mr. Sieber led me to believe that he was familiar with the place. I think the gist of the conversation was that Mr. Sieber told me what had been given for the place in these previous deeds and what he had heard about the place. * * * Mr. Sieber did not make any other representations to me in these negotiations concerning the land other than as to its quantity and its quality."

"One heavy consideration that caused me to make the exchange of the notes was this: if I did not make the exchange I had to raise $13,000.00 in cash and buy land that I considered I was giving every dollar it was worth and I did not want to do that."

That he either had to make the exchange or purchase the first lien on the Bailey county land the next morning. That at the time he acquired these notes he did not have as much confidence in appellee as he had before, because he had made false statements

relative to the Bailey county land, but that he relied on appellee's representations concerning the land in Wichita county.

The record discloses that the Wichita county land had been sold more than once prior to the transaction between appellant and appellee for from $18,000 to $21,000; that M. L. Burch and his wife, the payors of the second lien notes acquired by appellant, had paid approximately $22,000 for the land, a part of which consideration was evidenced by the second lien notes transferred to appellant; that the deeds by which the land had been conveyed described it as 272 acres more or less; that the notes accepted by and transferred to appellant were purchased by appellee from Hulme and Arp for about $4,000; that the first lien note for $7,500 became due, M. L. Burch and his wife, who executed said note, defaulted, and the owner advertised the land for sale under his deed of trust; that there was but approximately 109 acres of said tract in cultivation and about 25 more acres suitable for cultivation; that the reasonable market value of said land in September, 1929, was about $15,000.

The appellee testified that he advised Dr. King, the appellant, that he did not and had never owned the land; that he had never been on the land but once; that he and appellant went to see the land, and he informed appellant that Mr. Arp had told appellee that the tract contained 272½ acres, more or less, and 160 to 170 acres thereof was in cultivation; that all he told appellant at any time about the number of acres in the land or the number of acres that was in cultivation was the information he had received from Mr. Arp or Mr. Hulme, and every time he stated anything about the number of acres in the tract or in cultivation he informed appellant that his statements were based on information obtained from Arp or Hulme; that he at no time told appellant that there was 272 acres more or less in the place or that there was 160 or 170 acres in cultivation; that he had no personal knowledge of the number of acres in the land or farm, and was particular to inform appellant that he was only passing on information that he had received from Mr. Arp or Mr. Hulme.

■ In our opinion, this testimony, to the admission of which no complaint is made, was sufficient to authorize the judgment of the court.

The appellant, by proper assignments, assails as error the action of the court, in admitting, over his objection, certain testimony offered by appellee.

■ These assignments do not present reversible error, as, independent of the testimony complained of, the evidence was sufficient to warrant the judgment of the court.

"If improper testimony was admitted, the presumption obtains that the court founded his judgment on the competent testimony in the record. 'It must be assumed that every judge who has heard improper evidence, upon concluding that it should not have been admitted, is able to and does in fact discard it from his consideration when deciding the cause.' Creager v. Douglass, 77 Tex. 484, 14 S. W. 150. If there is sufficient competent evidence to support the finding, it is presumed that inadmissible evidence received over objection was not considered. Mallow v. Raynes (Tex. Civ. App.) 188 S. W. 23; Kingsville Cotton Oil Co. v. Dallas Waste Mills (Tex. Civ. App.) 210 S. W. 832; Pennington v. Fleming (Tex. Civ. App.) 212 S. W. 303; Broussard v. Le Blanc (Tex. Civ. App.) 182 S. W. 78." Wilcox et al. v. Dillard (Tex. Civ. App.) 3 S.W.(2d) 507, 513.

The judgment is affirmed.